**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | |
| | : | **Criminal No. 15-cr-139 (RJL)** |
| **ISSAM ABU-GHOSH,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM OF LAW

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, pursuant to the Court's June 3, 2019, Minute Order, respectfully

provides this memorandum of law addressing whether the defendant's pending charges in

Fairfax County, Virginia, ("Fairfax County") have any impact on the plea agreement in this

matter or the application of Section 3E1.1 ("Acceptance of Responsibility") under the United

States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to the defendant's sentence.

## INTRODUCTION

On July 10, 2018, the defendant Issam Abu-Ghosh pled guilty to a one-count

Superseding Information charging him with conspiracy to commit wire fraud and engaging in

monetary transactions in property derived from specified unlawful activity, in violation of 18

U.S.C. § 371.  *See* ECF No. 49.  The Court set the sentencing hearing for June 3, 2019.  *See* May

29, 2019 Minute Order.  On June 3, 2019, the Court converted the sentencing hearing to a status

hearing because the Court determined that the results of the defendant's pending case in Fairfax

County could potentially affect the defendant's sentence in this matter and the plea agreement.

The Court ordered that the government "submit further research and evaluation of the

defendant's criminal conduct in violation of state law that if proven can be reason to vitiate the

plea agreement." *See* June 3, 2019 ECF Docket Entry.  In addition, at the hearing, the Court

ordered that the Government determine, if the plea agreement was not vitiated, "if [the

defendant's conduct] occurred as alleged in Fairfax County . . . is . . . a sufficient basis for the

Court to deny [defendant] of [the] acceptance of responsibility" sentencing reduction under

Section 3E1.1 of the Guidelines.  *See* June 3, 2019 Hr'g Tr. at 5 (attached hereto as Exhibit A).

As set forth below, the government submits there is no breach of the plea agreement

based on the defendant's state law violations and, as such, the plea agreement cannot be vitiated.

In addition, the government believes that the acceptance of responsibility sentencing reduction

still applies regardless of the defendant's conviction in Fairfax County.

## PROCEDURAL BACKGROUND

On or about October 20, 2015, a grand jury issued an indictment charging the defendant

with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation

of 18 U.S.C. § 1343; conspiracy to engage in monetary transactions in property derived from

specified unlawful activity, in violation of 18 U.S.C. §§ 1956 and 1957; and first degree fraud, in

violation of 22 D.C. Code §§ 3222(a) and 3222(a)(1).  *See* ECF No. 11.  On February 16, 2016, a

grand jury returned a Superseding Indictment.  *See* ECF No. 18.  On October 25, 2016, a grand

jury returned a second Superseding Indictment, charging the defendant with conspiracy to

commit wire fraud, in violation of 18 U.S.C. § 1349; four counts of wire fraud, in violation of 18

U.S.C. § 1343; conspiracy to engage in monetary transactions in property derived from specified

unlawful activity, in violation of 18 U.S.C. §§ 1956 and 1957; and six counts of first degree

fraud, in violation of 22 D.C. Code §§ 3222(a) and 3222(a)(1).[1]  *See* ECF No. 28.

---

[1]  On November 15, 2016, the defendant was arraigned on the Second Superseding
Indictment.  *See* November 15, 2016 Minute Entry.

The Court held several status hearings between the defendant's arraignment on November 15, 2016, and September 6, 2017.[2]   At the September 6, 2017, status hearing, the defendant failed to appear because he had been arrested and detained in Loudoun County, Virginia ("Loudoun County") jail for an uttering charge.[3]  *See* September 6, 2017 Hr'g Tr. at 3-5 (attached hereto as Exhibit C).  The Court scheduled a status conference for October 20, 2017, a date after the defendant's next hearing date in Loudoun County.  *Id.* at 6, 9.

On October 20, 2017, the defendant was present at the status hearing after having been released from Loudoun County.  *See* October 20, 2017 Hr'g Tr. at 3 (attached hereto as Exhibit D).  The government informed the Court that the charges in Loudoun County had been *nolle prosequi*.  *Id*. at 4, 13.  In addition, the government identified to the Court that the defendant had been arrested in a new matter, the Fairfax County case, in which the defendant was charged with forging checks.[4]  *Id*.  The Fairfax County court had released the defendant on bond pending his next court date.  *Id*. at 12-13.  Due to the defendant's arrests, Pretrial Services Agency ("PSA") proposed adding new conditions to the defendant's release conditions.  The Court ordered the PSA and the government to work together to determine language regarding the defendant's

---

[2]  On June 26, 2017, the Court held a status hearing, wherein the government requested setting a trial date because the government's April 2017 plea offer to defendant had expired.  *See* June 26, 2017 Hr'g Tr. at 4 (attached hereto as Exhibit B).  The government informed the Court that it expected a trial to include approximately 40-50 witnesses, possible 404(b) evidence, and an estimated trial length of 5 weeks.  *Id.* at 5.

[3]  At the September 6, 2017 hearing, the government stated that it expected a trial to last four to six weeks and would include numerous witnesses, some of whom would be required to travel from foreign countries.  *Id*. at 8-9.

[4]  The specific charges in Fairfax County were obtaining money under false pretenses, and delivering forged checks.  *See* ECF No. 56 (September 14, 2018 Pretrial Services Report).  The three checks related to the Fairfax County charges were made in the amounts of $2,949.99, $3,367.99, and $3,682.12.

release conditions which imposed additional financial limitations on the defendant.[5]  *Id*. at 9.

The Court then modified the defendant's conditions of release to add restrictions on the

defendant's financial activity to include that: (1) the defendant could not write or deposit any

check or wire over $1,000 without prior approval from PSA; (2) the defendant must provide PSA

with his financial records; (3) the defendant was prohibited from opening any new companies;

and (4) the defendant was prohibited from opening any new bank accounts without prior

approval of PSA.  *See* ECF No. 37.

On January 8, 2018, a status hearing was held and the court set a trial date for September

10, 2018.  *See* January 8, 2019 Minute Entry.  Subsequently, the parties reached a plea

agreement and on April 24, 2018, the government filed a one-count Superseding Information

charging the defendant with conspiracy to commit wire fraud and engaging in monetary

transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 371.

*See* ECF No. 43.   On May 4, 2018, the parties filed a joint motion to set a plea hearing.  *See*

ECF No. 44.   On June 26, 2018, the Court arraigned the defendant on the Superseding

Information and the Court vacated the September 10, 2018 trial date.  *See* June 26, 2018 Hr'g Tr.

at 6 (attached hereto as Exhibit E); and June 26, 2018 Minute Entry.

On July 10, 2018, the Court held a plea hearing.  *See* July 10, 2018 Hr'g Tr. (attached

hereto as Exhibit F).[6]  The Court conducted the Rule 11 plea colloquy with the defendant,

---

[5]  At the October 20, 2017 hearing, the government requested that the Court set a
motions' hearing and the Court inquired about trial availability and the length of the trial.  *Id*. at
14-17.  The government informed the Court that it expected the trial to last four to six weeks and
have between 45-55 witnesses.  *Id*. at 15.  The defendant also raised the possibility of entering an
*Alford* plea.  *Id*. at 9-12.

[6]  *See also* ECF Nos. 43, 49.

including, but not limited to:  (1) whether the defendant understood the charge to which he was
pleading guilty (*id*. at 5, 9-10); his right to a trial (*id*. at 6-7); (3) the possible statutory penalties
(*id*. at 10); (4) the defendant's right to appeal his sentence, if the Court imposed a sentence
greater than the statutory maximum, or if the Court were to depart upwardly from the calculated
Guidelines Range (*id*. at 10-11); (5) the plea agreement (*id*. at 12-17); and (6) the Statement of
Offense (*id*. at 13, 17-24).[7]  The Court found that the defendant was aware of his rights, that he
was knowingly and voluntarily entering a guilty plea, and that there was a factual basis for the
plea.  *Id*. at 24-25.  The Court accepted the defendant's plea and set a sentencing date.[8]  *Id*. at 25,
27.

On June 3, 2019, the Court determined that the defendant's sentencing could not proceed
until the Fairfax County case was resolved.  *See* June 3, 2018 Hr'g Tr. at 3-4 (attached hereto as
Exhibit A).  The Court ordered the government to file an analysis regarding the impact of the
Fairfax County charges on:  (1) the plea agreement and whether it could be vitiated; and (2) the
U.S. Sentencing Guidelines calculation for acceptance of responsibility.  *Id*. at 7, 11, 24.  *See
also* ECF No. 68.  The Court also asked the government to address why the government would
not ask for the plea agreement to be vitiated, if it could do so.  *Id*. at 24.

On August 5, 2019, the defendant pled guilty to one count of obtaining money by false
pretenses in Fairfax County.  The defendant's Fairfax County sentencing date is scheduled for
November 15, 2019.

---

[7]  *See* Rule 11 of the Federal Rules of Criminal Procedure.

[8]  The sentencing hearing was later continued to June 3, 2019.  *See* May 2, 2019 Minute
Order.

## **ARGUMENT**

When the parties entered into the plea agreement on July 10, 2018, the parties were aware of the defendant's August 2017 arrest in Fairfax County.  As the arrest was known to the parties at the time of the plea agreement, the arrest cannot be considered a breach by the defendant of the plea agreement. Absent a breach by the defendant, the government does not have a basis to vitiate the plea.  In addition, the disposition of the Fairfax County charges have no impact regarding the government's position that the defendant meets the criteria for "acceptance of responsibility" under Section 3E1.1 of the Guidelines and that the defendant should receive the three-level reduction in the Guidelines calculations.  Finally, the defendant's guilty plea is in the interest of justice by:  (a) providing finality regarding the criminal activities that the defendant admittedly engaged in; (b) saving government and judicial resources; and (c) having the approval of victims in this matter.

**A.     The Defendant Did Not Breach the Plea Agreement**

A "plea agreement is a contract," and "courts will look to the principles of contract law to determine whether a plea agreement has been breached."  *In re:  Sealed Case*, 686 F.3d 799, 802 (D.C. Cir. 2012), citing *United States v. Jones*, 58 F.3d 688, 691 (D.C. Cir. 1995) (finding that the government did not breach the plea agreement when it asked the Court to revoke the defendant's release).  "Determining whether a plea agreement was breached 'presents a mixed question of law and fact in which the factual aspects usually predominate.'"  *United States v. Ahn*, 231 F.3d 26, 38 (D.C. Cir. 2000), citing *United States v. Pollard*, 959 F.2d 1011, 1023 (1992) (finding the government did not breach plea agreement by questioning witnesses at sentencing, when it agreed not to take a position regarding whether the defendant obstructed

justice).  Here, the facts and the law demonstrate that defendant did not violate the plea

agreement, and therefore, the government cannot request that the plea agreement be vitiated.

      The plea agreement in this matter was entered in July 2018, after the defendant had

already committed and been arrested for the criminal conduct in Fairfax County.  *See* ECF No.

49.  The government and the Court were aware of the pending charges in Fairfax County almost

a year before the defendant entered his guilty plea.  *See* October 20, 2017 Hr'g Tr. at 4 (attached

hereto as Exhibit D).  At the October 20, 2017 status hearing, the Court asked the prosecutor,

"What's the status of his situation over in Virginia?"  *Id*. at 4.  The government responded,

> He has – the case that he has been detained on was dismissed . . . . The
> Loudon County case was nolle prossed.  The Fairfax case, which I don't
> believe you've heard about that yet . . . . is pending.  He's released on
> bond out of Fairfax.  That is a check cashing case.  If I remember the facts,
> I think he submitted three checks to a [check] cashing place that were
> fraudulent.  He's currently release in Fairfax, and that case is pending.

The Court inquired, "What was the total amount on those three – "

> That was a low dollar amount.  I think it was between 10 and $15,000.
> It's in the paperwork here, Your Honor, if you'd like me to look, but it
> was a lower dollar amount than the Loudoun County case, if you
> remember with the --

The Court, "190."

> 194.  I think.  Yes, but it's currently the Fairfax case that is pending and
> likely to go forward.  We did have a conversation with Pretrial Services,
> and I expected someone to be here today.  I do not see anyone right now.
> If you look at their report, there's a recommendation for some change of
> conditions . . . ."  *Id*. at 4-5.

Because the conduct in Fairfax County was alleged to have been committed in another State

before the entry of the plea agreement and was not a crime of violence, there are no provisions in

the plea agreement that the defendant breached as a result of that the alleged activity in Fairfax County.[9] *See* ECF No. 49.

Pursuant to the plea agreement, the government's ability to take action against a defendant in the event he commits additional criminal conduct requires that the criminal conduct: (1) occur after the plea was entered; or (2) had been unknown to the government. *Id.* The relevant language regarding the consequences of additional criminal conduct is located, first in Section 4(C), which discusses the defendant's U.S. Sentencing Guideline range, and second in Section 8, regarding conditions of release.

> Your client understands and acknowledges that the terms of this section apply only to conduct that occurred before the execution of this Agreement. **Should your client commit any conduct after the execution of this Agreement** that would form the basis for an increase in your client's base offense level or justify an upward departure (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the probation officer, or the Court), the Government is free under this Agreement to seek an increase in the base offense level based on that post-agreement conduct. (Emphasis added).

*Id.* at 5, Section 4(C).  Thus, Section 4(C) limits the sentencing consequences to the defendant to post-agreement conduct.  Similarly, in Section 8, the government may seek to change the conditions of the defendant's release where the defendant engages in additional criminal conduct between the plea hearing and the sentencing hearing or when the government was unaware of the activity.

> The Government may move to change your client's conditions of release, including requesting that your client be detained pending sentencing, **if your client engages in further criminal conduct prior to sentencing or if the Government obtains information that it did not possess at the**

---

[9] Section 3 of the plea agreement sets forth the criteria for the United States Attorney's Office for the District of Columbia to prosecute other criminal activity predating the agreement in the District of Columbia, which does not apply to the Fairfax County charges.

**time of your client's plea of guilty and that is relevant to whether your
client is likely to flee or pose a danger to any person or the
community**.

*See* ECF No. 49 at 6.  The allegations related to the Fairfax County charges occurred before the

plea hearing and the government was aware of the activity prior to the plea negotiations.  Thus,

there is no provision of the plea agreement that the defendant breached, even if convicted of the

Fairfax County charges, and there is no basis for the government to request the plea agreement

be rescinded.

> **B.     Fairfax County Charges Not Relevant to Defendant's Acceptance of
> Responsibility**

Pursuant to Section 4(A) of the plea agreement, the government agreed to recommend a

three-level reduction of the defendant's Guidelines based upon "acceptance of responsibility," if

the government determined that the defendant's "allocution, adherence to every provision of this

Agreement and conduct between entry of the plea and imposition of sentence" suggested that the

defendant accepted responsibility, and he did so in a timely manner "permitting the government

to avoid preparing for trial and permitting the Court to allocate its resources efficiently."  *See*

ECF No. 49 at 3.  Since the defendant has met those conditions, the government agrees to the

application of Section 3E1.1 (a) and (b), and asserts that the defendant is entitled to a three-level

reduction of his Guidelines calculation.  *See* ECF No. 64 at 25.

In *United States v. Mosley*, 505 F.3d 804, 809 (8th Cir. 2007), the Eighth Circuit found

that the government breached a plea agreement when it argued against an "acceptance of

responsibility" adjustment based upon the defendant's pre-plea statements in which the

defendant downplayed her role in the offense.  The court found "that the government may

contest the adjustment based on **subsequent acts** of the defendant that are inconsistent with the

previous agreement that the defendant accepted responsibility[,]" but the government asserted

that the defendant's conduct occurring before the plea hearing was the basis for its position.  *Id*.

(emphasis in original).  The court found the government breached the plea agreement.  Similarly,

the defendant's charges in Fairfax County occurred before the plea hearing in this matter and

have no relevancy to the defendant's "acceptance of responsibility."

Under Section 3E1.1(a) of the Guidelines, a defendant must "demonstrate[] acceptance of

responsibility for his offense" by "truthfully admitting the conduct comprising the offense(s) of

conviction, and truthfully admitting or not falsely denying any additional relevant conduct for

which the defendant is accountable under §1B1.3 (Relevant Conduct)."  *See* U.S.S.G. § 3E1.1(a),

cmt. n.1(a).  An additional one-level reduction is applicable, if a defendant gives the government

timely notification of his intention to enter a guilty plea, thereby allowing the government to

avoid preparing for trial and conserving prosecutorial and judicial resources.  *See* U.S.S.G. §

3E1.1(b).

The defendant's alleged conduct in the Fairfax County case does not constitute "relevant

conduct" for § 3E1.1 purposes, because his conduct was not connected in any way to the offense

in this matter and was "beyond the offense of conviction."  The Guidelines do not require a

defendant to volunteer "relevant conduct beyond the offense of conviction," and in fact, a

defendant may "remain silent in respect to relevant conduct beyond the offense of conviction

without affecting his ability to obtain a reduction under this subsection."  *Id*. § 3E1.1, cmt.

n.1(a).  In *United States v. Hicks*, 978 F.2d 722 (D.C. Cir. 1992), the D.C. Circuit found that the

1992 Amendments to the Guidelines changed the language in § 3E1.1 from requiring a defendant

to accept responsibility for "his criminal conduct" to requiring a defendant to accept

responsibility for "his offense."  The Court of Appeals reasoned that the amended Application

Note 1(a) to § 3E1.1 "indicates that the Guideline requires the showing of contrition only with

respect to the offense of conviction." *Id.*  The "only plausible reading of the Guidelines for

cases in which a plea agreement has been made, is that 'acceptance of personal responsibility for

his criminal conduct' means the criminal conduct to which the defendant pleads guilty." *United*

*States v. Perez-Franco*, 873 F.2d 455, 459 (1st Cir. 1989).  In order to warrant a reduction under

§ 3E1.1, a defendant "must show contrition for the crime of which he was convicted, but he need

not accept blame for all crimes of which he may be accused." *United States v. Piper*, 918 F.2d

839, 841 (9th Cir. 1990).

Here, defendant pled guilty to the charge in the Information and accepted responsibility

for his actions in the offense of conviction.  The Guidelines do not require a defendant to "accept

blame" for all his/her criminal conduct beyond the offense of conviction to be eligible for the

application of a reduction under Section 3E1.1 of the Guidelines.

### C.      Plea Agreements Play a Vital Role in the Criminal Justice System

Since the defendant did not breach of the plea agreement, the government is required by

law to uphold its provisions – regardless that the defendant ultimately entered a guilty plea to a

charge in Fairfax County.  The Supreme Court agrees that plea agreements play a vital role in the

criminal justice system.  "The disposition of criminal charges by agreement between the

prosecutor and the accused, sometimes loosely called 'plea bargaining' is an essential component

of the administration of justice.  Property administered, it is encouraged.  If every criminal

charge were subjected to a full-scale trial, the States and the Federal Government would need to

multiply by many times the number of judges and court facilities." *Santobello v. New York*, 404

U.S. 257, 260  (1971) (holding that the interests of justice require that the prosecutor uphold

promises to the defendant regarding sentencing recommendation made in exchange for a guilty

plea). *Id*. at 258.

> "Every inroad on the concept of finality undermines confidence in the
> integrity of our procedures; and, by increasing the volume of judicial
> work, inevitably delays and impairs the orderly administration of justice.
> The impact is greatest when new grounds for setting aside guilty pleas are
> approved because the vast majority of criminal convictions result from
> such pleas. Moreover, the concern that unfair procedures may have
> resulted in the conviction of an innocent defendant is only rarely raised by
> a petition to set aside a guilty plea."

*United States v. Griffin*, 641 F. Supp. 1546, 1549 (D.D.C. 1986), citing *United States v.*

*Timmreck*, 441 U.S. 780, 784 (1979) (citation and footnote omitted) (denying defendant's

motion to set aside plea agreement after finding that prosecutor did not breach the

agreement by making remarks relevant to restitution).

> The plea agreement process permitted [the defendant] and the
> government to allocate risk, to obtain benefits, to achieve finality
> and to save resources. This process is at the very center of the
> criminal justice system. If either party were able to secure its
> benefits while making its obligations contingent, the utility of plea
> agreements would disappear.

*United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) (citation omitted). *See also United*

*States v. Wolff*, 127 F.3d 84, 86-89 (D.C. Cir. 1997) (holding the government violated the plea

agreement when it argued against the three-point reduction for acceptance of responsibility under

Section 3E1.1 of the Guidelines).

    Even if the government were able to vitiate the plea agreement in this matter, it would not

request that the Court do so. Plea negotiations and guilty pleas are vital components of the

United States' criminal justice system by providing advantages to the defendant, the victims, and

the government.

> For the defendant who sees slight possibility of acquittal, the advantages
> of pleading guilty and limiting the probable penalty are obvious – his
> exposure is reduced, the correctional processes can begin immediately,
> and the practical burdens of a trial are eliminated. For the States there are
> also advantages – the more promptly imposed punishment after an
> admission of guilty may more effectively attain the objectives of

punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substation issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof.  It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

*Brady v. United States*, 397 U.S. 742, 751-52 (1969).  *See also United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997) ("[P]lea agreements can have extremely valuable benefits to both sides – most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt.").  Among other advantages gained from entering a guilty plea, a defendant normally gains an "acceptance of responsibility" reduction. "[I]n pleading guilty, [the defendant] earned a three-level reduction from his base offense level for acceptance of responsibility – a benefit that he would have lost had he gone to trial" *United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005), citing *Corbitt v. New Jersey*, 439 U.S. 212, 224 n.14 (1978).  The victims of the defendant's criminal conduct and the government gain a prompt determination of the defendant's guilt and "the objectives of punishment" are obtained, and court and government resources are reserved for cases where there is a substantial question of the defendant's guilt or "doubt that the State can sustain its burden of proof." *Brady*, 397 U.S. at 752.  *See also Price v. U.S. Department of Justice Attorney Office*, 865 F.3d 676, 681 (D.C. Cir. 2017) ("[W]hen a criminal defendant waives his right to a trial, prosecutors save the time and resources typically involved in obtaining a conviction.").  A defendant's guilty plea also

satisfies the public's interest in "the prosecution of crime and confirms that the prosecutor's charges have a basis in fact." *Town of Newton v. Rumery*, 480 U.S. 386, 393 n.3 (1987).[10]

In this matter, the victims, the defendant, and the government all benefitted from the defendant's guilty plea. The plea gave the victims finality as to the charges and they did not have to be involved in the potential uncertainty of a trial that was projected to last between four to six weeks. The defendant eliminated the risks associated with proceeding to trial and the possibility of the imposition of a harsher sentence. The government obtained the defendant's admission to his criminal conduct in this matter and conserved scarce governmental resources. Thus, the defendant's guilty plea was in the interests of justice.

## CONCLUSION

The government's review of the plea agreement in light of the defendant's State court arrest and subsequent guilty plea finds that the defendant did not breach the terms of the plea agreement. The government is thus bound by the terms of the plea agreement and cannot vitiate the plea. In addition, the government asserts that the defendant's guilty plea to a charge in Fairfax County cannot be a basis for the Court to deny the defendant acceptance of responsibility under the Section 3E1.1 of the Guidelines.

---

[10] As the *Brady* court noted, this "mutuality of advantage" may explain the high rate of guilty pleas in the criminal justice system, *Brady*, 397 U.S. at 752. Currently, 97.2% of criminal convictions in federal court were the result of guilty pleas. *See* U.S. SENTENCING COMMISSION, 2017 FEDERAL SENTENCING STATISTICS – D.C. CIRCUIT, at 3, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2017/dcc17.pdf

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472845


By:     */s/ Diane G. Lucas*
        MICHELLE ZAMARIN,
        D.C. Bar No. 424047
        DIANE LUCAS,
        D.C. Bar No. 443610
        MICHAEL J. MARANDO,
        N.Y. Bar No. 4250395
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-6931 (Zamarin)
        (202) 252-7724 (Lucas)
        (202) 252-7068 (Marando)
        Michelle.Zamarin@usdoj.gov
        Diane.Lucas@usdoj.gov
        Michael.Marando@usdoj.gov