**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | |
| | : | **Criminal No. 15-cr-139 (RJL)** |
| **ISSAM ABU-GHOSH,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Supplemental Memorandum in Aid of Sentencing for defendant Issam Abu-Ghosh.  In its initial sentencing memorandum, the government recommended that the defendant receive a sentence at the low end of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range and that the defendant should receive credit for acceptance of responsibility.  *See* Government's Memorandum in Aid of Sentencing, ECF No. 64.  After pleading guilty and executing the plea agreement, the defendant continued to engage in criminal conduct and act in direct contravention of the Court's orders.  As such, the government does not believe that the defendant should receive a two level decrease of the defendant's offense level for acceptance of responsibility under the Sentencing Guidelines.  The government requests that the Court consider this additional information and the evidence that will be presented at the sentencing hearing regarding the defendant's conduct since the plea hearing and its effect, if any, on the Court's determination of the defendant's "acceptance of responsibility."

## RELEVANT PROCEDURAL BACKGROUND

On or about October 20, 2015, a grand jury issued an indictment charging the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation

of 18 U.S.C. § 1343; conspiracy to engage in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 1956 and 1957; and first degree fraud, in violation of 22 D.C. Code §§ 3222(a) and 3222(a)(1). *See* ECF No. 11.  On February 16, 2016, a grand jury returned a Superseding Indictment. *See* ECF No. 18.  On October 25, 2016, a grand jury returned a second Superseding Indictment, charging the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; four counts of wire fraud, in violation of 18 U.S.C. § 1343; conspiracy to engage in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 1956 and 1957; and six counts of first degree fraud, in violation of 22 D.C. Code §§ 3222(a) and 3222(a)(1).[1] *See* ECF No. 28.

The Court held several status hearings between the defendant's arraignment on November 15, 2016, and September 6, 2017.   At the September 6, 2017, status hearing, the defendant failed to appear because he had been arrested and detained in Loudoun County, Virginia ("Loudoun County") jail for an uttering charge. *See* September 6, 2017 Hr'g Tr. at 3-5. The Court scheduled a status conference for October 20, 2017, a date after the defendant's next hearing date in Loudoun County. *Id.* at 6, 9.

On October 20, 2017, the defendant was present at the status hearing after having been released from Loudoun County. *See* October 20, 2017 Hr'g Tr. at 3.  The government informed the Court that the charges in Loudoun County, Virginia had been *nolle prosequi*. *Id*. at 4, 13.  In addition, the government identified to the Court that the defendant had been arrested in a new matter, the Fairfax County case, in which the defendant was charged with forging checks.[2] *Id*.

---

1  On November 15, 2016, the defendant was arraigned on the Second Superseding Indictment. *See* November 15, 2016 Minute Entry.

2  The specific charges in Fairfax County were obtaining money under false pretenses, and delivering forged checks. *See* ECF No. 56 (September 14, 2018 Pretrial Services Report).

The Fairfax County court had released the defendant on bond pending his next court date. *Id.* at 12-13. Due to the defendant's arrests, Pretrial Services Agency ("PSA") proposed adding new conditions to the defendant's release conditions. The Court ordered the PSA and the government to work together to determine language regarding the defendant's release conditions which imposed additional financial limitations on the defendant.[3] *Id.* at 9. The Court then modified the defendant's conditions of release to add restrictions on the defendant's financial activity to include that: (1) the defendant could not write or deposit any check or wire over $1,000 without prior approval from PSA; (2) the defendant must provide PSA with his financial records; (3) the defendant was prohibited from opening any new companies; and (4) the defendant was prohibited from opening any new bank accounts without prior approval of PSA. *See* ECF No. 37.

On July 10, 2018, the defendant pled guilty to a one-count Superseding Information charging him with conspiracy to commit wire fraud and engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 371. *See* ECF No. 49. The Court scheduled the sentencing hearing for October 19, 2018. On October 11, 2019, the Court granted the defendant's motion to continue the sentencing hearing. *See* ECF No. 57; Minute Order dated October 11, 2019. On March 8, 2019, the government moved for a sentencing hearing. *See* ECF No. 58. The Court set the sentencing hearing for June 3, 2019.

---

The three checks related to the Fairfax County charges were made in the amounts of $2,949.99, $3,367.99, and $3,682.12.

3 At the October 20, 2017 hearing, the government requested that the Court set a motions' hearing and the Court inquired about trial availability and the length of the trial. *Id.* at 14-17. The government informed the Court that it expected the trial to last four to six weeks and have between 45-55 witnesses. *Id.* at 15. The defendant also raised the possibility of entering an *Alford* plea. *Id.* at 9-12.

*See* May 29, 2019 Minute Order.  On May 28, 2019, the government filed its Memorandum in Aid of Sentencing.  *See* ECF No. 64.  On May 30, 2019, the defendant filed his sentencing memorandum.  *See* ECF No. 66.

On June 3, 2019, the Court converted the sentencing hearing to a status hearing because the Court determined that the results of the defendant's pending case in Fairfax County Virginia might potentially affect the defendant's sentence in this matter and the plea agreement and requested the parties to provide a legal analysis.  *See* June 3, 2018 Minute Order.  On August 20, 2019, the government filed a Memorandum of Law.[4]  *See* ECF No. 78.

On August 21, 2019, the defendant filed a Motion to Modify the Court's June 3, 2019, Order regarding the requirement that the defendant submit to an interview with Pretrial Services Agency.  *See* ECF No. 79.  On September 11, 2019, a status hearing was held and the Court denied the defendant's motion to modify the Court's June 3, 2019 Order.  *See* September 11, 2019 Minute Order.  On September 20, 2019, the defendant interviewed with the government present and a transcript of that interview was provided to the Court.

On November 25, 2019, the government filed a Motion to Set the Sentencing Hearing. *See* ECF No. 86.   On December 3, 2019, the government filed a Motion to Revoke the Defendant's Conditions of Release due to a new arrest warrant based on new criminal conduct

---

4  On August 5, 2019, the defendant pled guilty to one count of obtaining money by false pretenses in Fairfax County, Virginia.  On November 15, 2019, the Fairfax County court sentenced the defendant to five years' incarceration with five years of the sentence suspended and a two year period of unsupervised probation.  As noted in the government's August 20, 2019 Memorandum of Law, the defendant's criminal activity and his arrest in Fairfax County in August 2017 was known to the government at the time the defendant entered his guilty plea.  *See* ECF No. 78.  It was also part of the Presentence Report.  *See* 61, ¶ 86.  Since the criminal activity in the Fairfax County matter predates the defendant's guilty plea, his conviction should not be considered by the Court in determining whether the defendant is entitled to receive an "acceptance of responsibility" reduction under the Guidelines.  *See* ECF No. 78.

from Loudoun County.  *See* ECF No. 88.   On December 12, 2019, a hearing was held and the

Court revoked the defendant's conditions of release and scheduled the sentencing hearing for

January 9, 2010.[5]

On January 8, 2010, the Court issued a Minute Order converting the sentencing hearing

to a status hearing.  On January 9, 2010, at the status hearing the Court ordered the parties to

supplement their sentencing memorandums in light of the defendant's arrest in Loudoun County,

Virginia.  The Court reset the sentencing hearing for January 14, 2020, at 3:00 p.m.

## FACTUAL DEVELOPMENTS

On November 25, 2019, the defendant was arrested in the District of Columbia on a new

warrant issued out of Loudoun County, Virginia, charging the defendant with two counts of

obtaining money by false pretenses.[6]  *See* ECF No. 88.  According to the Criminal Complaint, in

April 2019, the defendant created two fictitious instruments – checks purportedly from two

businesses that were deposited into a bank account at the Bank of Clark County in Virginia. The

checks were deposited into a bank account opened by the defendant and were both issued to

"Issam Ghosh."  According to the bank records, within a few days of the deposits, the defendant

made numerous cash withdrawals and purchases which caused the bank to overdraw the account.

The amount of loss to the bank was approximately $6,495.89.

---

5  The Court found that the defendant violated the Court's October 20, 2017 Order,
which prohibited the defendant from ". . . writ[ing] or deposit[ing] any check or wire over $1,000
without prior approval from Pretrial Services Agency (PSA) . . . open[ing] any new bank
accounts without approval of pretrial services."  *See* ECF No. 37.

6  The defendant is scheduled to appear in court in Loudoun County on January 23, 2020,
for ascertainment of counsel.

The government obtained bank records from the Bank of Clark County Virginia, including videotaped images of the transactions involving the defendant.  The records reveal that on or about February 5, 2019, the defendant opened two accounts, xxxx4478, and xxxx8600.[7] The two false checks were purportedly drafted on or about April 19, 2019.  On or about April 19, 2019, the defendant deposited into account no. xxxx4478, check no. 34822 purportedly drawn on a closed account of Augustine Homes, LLC in the amount of $5,000.  The check memo states that the funds were a "DEPOSIT REFUND."  On or about April 22, 2019, defendant deposited into that same account, check no. 45967 purportedly drawn on a payroll account of Edgesource Corporation in the amount of $1,495.89.  The checks were returned and dishonored by the alleged issuing financial institutions between April 24, and April 25, 2019.  The defendant, however, had already spent the funds from those checks, leaving him with a negative balance on April 25, 2019 of -$1,975.88.  The bank of Clark County closed the bank accounts by June 2019.[8]

During the approximately four months-time that the accounts were open, there were thousands of dollars deposited and withdrawn from the accounts.  For example, there were multiple peer-to-peer transfers and cash deposits.  There were debits for hotels, food, and personal items.[9]  There were multiple transfers from an account at Eagle Bank and an account at

---

7  The defendant violated the Court's release conditions by opening the accounts without the permission of Pretrial Services.  *See* ECF No.  37.

8  At the time of his initial interview with the Probation Office prior to May 24, 2019, the defendant "reported he has no bank accounts."  *See* ECF No.  61, ¶ 112.  At this time, the government does not know when the interview with Pretrial Services occurred, but believes that it would have been before the defendant opened the accounts at the Bank of Clark County.

9  Some of the debits appear to be from out-of-state, such as a $328.12 bill from a Sheraton hotel in Romulus, Michigan on March 19, 2019.

Golden Eagle Bank.  All of the defendant's banking activity involving the Bank of Clark County accounts were conducted without the knowledge of Pretrial Services and in contravention of the Court's release conditions.[10]

## LEGAL ANALYSIS

### I.    Defendant's Acceptance of Responsibility and Section 3E1.1 of the U.S.S.G.

Based on the defendant's criminal conduct since his guilty plea and his failure to follow the Court's October 20, 2017 order, the defendant is not entitled to receive a reduction in points pursuant to U.S.S.G. § 3E1.1(a)  for acceptance of responsibility.  "The district court's conclusion that a defendant has not 'clearly demonstrated acceptance of responsibility" within the meaning of U.S.S.G. § 3E1.1(a) is an application of the Guidelines to the facts, which this court reviews under a due deference standard."  *United States v. Leyva*, 916 F.3d 14, 28 (D.C. Cir. 2019), citing *United States v. Rodriguez*, 676 F. 3d 183, 192 (D.C. Cir. 2012).  The Guidelines provide for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).  A "defendant who enters a guilty plea is not entitled to an adjustment . . . as a matter of right."  *United States v. Saani*, 650 F.3d 761, 767 (D.C. Cir. 2011) (quoting U.S.S.G. § 3E1.1 cmt. n.3). The defendant bears the burden of convincing the Court that he is entitled to a downward adjustment for acceptance of responsibility.  *See United States v. McLean*, 951 F.2d 1300, 1302 (D.C. Cir. 1991).

The Plea Agreement in this matter mirrors the Guidelines, conditioning credit for accepting responsibility on the defendant.  As set forth in the Plea Agreement, the government agreed that a 2-level reduction would have been appropriate, pursuant to U.S.S.G. § 3E1.1,

---

10   In addition, on or about April 22, 2019, the day the defendant deposited the first fictitious instrument, the defendant opened a third account at the Bank of Clark County Virginia, account no. xxxx8398, with a $500 transfer from account no. xxxx4478.

provided that the defendant clearly demonstrated acceptance of responsibility, to the satisfaction

of the government, through the defendant's allocution, adherence to every provision of the

Agreement, and "**conduct between entry of the plea and imposition of sentence.**" (Emphasis

added). *See* ECF No. 49 at 3-4.

As set forth in the government's Plea Agreement and Memorandum in Aid of Sentencing,

the government initially supported the defendant receiving credit for "acceptance of

responsibility" because the defendant admitted his guilt regarding his criminal conduct in this

matter, implying that he was on a new path. *See* ECF Nos. 49, 64. Since the plea hearing,

however, the defendant has flouted the Court's orders and the law by continuing to engage in

criminal conduct. U.S.S.G. § 3E1.1. Acceptance of Responsibility states the following, in

pertinent part, in its Application Notes:

> 1. In determining whether a defendant qualifies under subsection (a),
> appropriate considerations include, but are not limited to, the following:
>
> (A) truthfully admitting the conduct comprising the offense(s) of
> conviction, and truthfully admitting or not falsely denying any additional relevant
> conduct for which the defendant is accountable under § 1B1.3 (Relevant
> Conduct). Note that a defendant is not required to volunteer, or affirmatively
> admit, relevant conduct beyond the offense of conviction in order to obtain a
> reduction under subsection (a). A defendant may remain silent in respect to
> relevant conduct beyond the offense of conviction without affecting his ability to
> obtain a reduction under this subsection. However, a defendant who falsely
> denies, or frivolously contests, relevant conduct that the court determines to be
> true has acted in a manner inconsistent with acceptance of responsibility;
> (B) voluntary termination or withdrawal from criminal conduct or
> associations (emphasis added);
> (C) voluntary payment of restitution prior to adjudication of guilt;
> (D) voluntary surrender to authorities promptly after commission of the
> offense;
> (E) voluntary assistance to authorities in the recovery of the fruits and
> instrumentalities of the offense;
> (F) voluntary resignation from the office or position held during the
> commission of the offense;
> (G) post-offense rehabilitative efforts (e.g., counseling or drug treatment);
> and

(H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

2. …

3. Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(A), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right. (Emphasis added).

4. …

5. The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

6. Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease in offense level for a defendant at offense level 16 or greater prior to the operation of subsection (a)....Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing. See section 401(g)(2)(B) of Pub. L. 108-21. The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal.

If the government files such a motion, and the court in deciding whether to grant the motion also determines that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, the court should grant the motion.

As the application notes state, a defendant who enters a guilty plea is not entitled to an adjustment under Section 3E1.1 as a matter of right. *Id*. "Merely pleading guilty does not entitle a defendant to an acceptance of responsibility reduction." *United States v. Panice*, 598 F.3d 426, 435 (7th Cir. 2010). In assessing this adjustment, "[t]he judgment involved is essentially a moral

one, best entrusted to the trial judge who can personally observe the defendant and gauge the quality of his repentance." *United States v. Colbert*, 172 F.3d 594 (8th Cir. 1999).

One of the conditions of acceptance of responsibility is "voluntary termination or withdrawal from criminal conduct or associations."  U.S.S.G. § 3E1.1, Application Note 1.B. Both the Guidelines and case law allow the Court to consider a defendant's post-plea conduct to determine whether the defendant has "accepted responsibility."  There is precedent for the notion that new criminal conduct committed by a defendant after pleading guilty, but prior to sentencing, can form the basis for the denial of acceptance of responsibility from the Court.  In *United States v. MacArthur*, 805 F.3d 385, 389–90 (1st Cir. 2015), the defendant argued that the district court had erred by basing its determination on an assault that he committed before he was charged with the federal crimes for which he was sentenced in this case.  But on appeal, the Court found that the district court had actually based its sentencing determination on an assault that MacArthur committed after he pled guilty to the federal charges in this case, and went on to hold that "in determining the propriety *vel non* of an acceptance-of-responsibility credit, [a district court] may consider a defendant's commission of any post-indictment criminal conduct, whether or not it bears a significant connection to, or constitutes a significant continuation of, the offense of conviction." (Internal citation omitted).  *Id*.

In *United States of America v. Guillermo Segovia*, 509 Fed. Appx. 7 (D.C. Cir. 2013), the defendant argued on appeal that the court erred in focusing on his new criminal conduct in denying the acceptance of responsibility reduction, because the new criminal conduct was of a different nature than the crime to which he pled guilty.  The court held that the district court's decision to deny the two-point reduction was reasonable because the defendant "fled the country for three years between his plea and his sentence, and was reprehended only after being pulled

over and convicted of drunk driving in Maryland, resulting a sentencing enhancement for obstruction . . .the administration of justice." *Id*. at 7-8.  In this matter, not only has the defendant engaged in new criminal conduct in a way clearly recognized by our courts as justifying denial of acceptance of responsibility, but the conduct was consistent with his efforts to financially defraud individuals and entities.

The defendant's recent criminal conduct in Loudoun County is inconsistent with acceptance of responsibility.  The defendant's activities of opening new bank accounts and depositing checks or wires valued at more than $1,000 without the approval of Pretrial Services, presenting and depositing fictitious instruments at a bank and withdrawing funds knowing that they were fraudulently obtained are all serious violations of the Court's order and the trust the Court gave the defendant at the time he was released pending sentencing.  The defendant has demonstrated a failure follow the Court's orders and to withdraw from criminal conduct as contemplated by U.S.S.G. § 3E1.1 (1)(B) above.  Thus, he should not receive a 2-level reduction under Guidelines for "acceptance of responsibility."  The government, however, maintains that the defendant should be sentenced at the low end of the sentencing Guidelines range.

## **CONCLUSION**

Therefore, the Government requests that the Court should not decrease the defendant's

offense level by two levels under Section 3E1.1 of the United States Sentencing Guidelines.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
for the District of Columbia
D.C. Bar No. 472845

By: _____/s/_____
DIANE G. LUCAS, D.C. Bar. No. 443610
MICHELLE A. ZAMARIN, D.C. Bar No. 424740
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7724 (Lucas)
(202) 252-6931 (Zamarin)
Diane.Lucas@usdoj.gov
Michelle.zamarin@usdoj.gov